CHARLES A. ZAHN CO. v. UNITED
STATES.

ZAHN et al. v. SAME (two cases).
Nos. K–188, L–118, M–71.

Court of Claims.
April 2, 1934.

318

Vincent J. Hefferman, of Chicago, Ill. (Edward Clifford and H. H. Shinnick, both of Washington, D. C., on the brief), for plaintiffs.

Joseph H. Sheppard, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WILLIAMS, Judge.

These cases were consolidated by the court on March 1, 1932, for the purpose of trial. The facts applicable to the three cases have been stipulated by the parties as set forth in the findings. The controversy relates to an overpayment by the Charles A. Zahn Company, an Illinois corporation, of its income and profits taxes for the year 1920 which, to the extent of $32,081.68, was credited by the Commissioner of Internal Revenue against taxes due from the same company for the year 1919, after the expiration of the statutory period in which taxes for the year 1919 were legally collectible.

The petition in No. K–188 is filed in the name of the Charles A. Zahn Company. In Nos. L–118 and M–71, the petitions are filed in the names of Charles J. Zahn and Ernst Bartel, acting for and on behalf of all parties interested in the collection and distribution of the assets of the Charles A. Zahn Company, dissolved, and certain persons acting in their own individual rights as stockholders of the Charles A. Zahn Company as of the date of its dissolution.

### No. K–188

■ The Charles A. Zahn Company was dissolved under the laws of the state of Illinois, on March 30, 1921. Section 14 of the Corporation Act of Illinois (chapter 32, § 14 of the 1925 Smith-Hurd Revised Statutes) provides that: "All corporations organized under the laws of this State, whose powers may have expired by limitation or otherwise, shall continue their corporate capacity for two years for the purpose only of collecting debts due such corporation and selling and conveying the property and effects thereof. Such corporations shall use their respective names for such purposes and shall be capable of prosecuting and defending all suits at law or in equity." Section 79 of the same act (Smith-Hurd Rev. St. 1925, c. 32, § 79) provides that: "The dissolution, for any cause whatever, of any corporation, shall not take away or impair any remedy given against such corporations, its officers, or stockholders, for any liabilities incurred previous to its dissolution, if suit therefor is brought and service of process had within two years after such dissolution."

Two years after the dissolution of the corporation, or on March 30, 1923, the Charles A. Zahn Company ceased to exist, and became incapable of transacting any business whatever in its corporate capacity. A. J. Bates Co. v. United States (Ct. Cl.) 3 F.

Supp. 245. This suit filed more than six years thereafter, on May 10, 1929, cannot be maintained.

### Nos. L–118 and M–71

The petitions in these cases were filed on April 7, 1930, and February 18, 1931, respectively, seven and eight years after the Charles A. Zahn Company had ceased to exist for any purpose whatever and had become incapable of either instituting or defending suits in its corporate capacity. The defendant makes the point that, under the decision in the Bates Case, supra, the same situation obtains in respect to the plaintiffs' right to maintain these suits as that of the Charles A. Zahn Company in No. K–188. Since this contention, if meritorious, is material to the decision only in the event the plaintiffs are otherwise entitled to recover, and we do not think they are, we prefer to dispose of the cases upon the merits.

■ The Charles A. Zahn Company filed its tax return for the year 1919 on March 3, 1920. The statutory period for the collection of the taxes assessed thereon expired on March 3, 1925. The credit of $32,081.68 of the overpayment for 1920 against the outstanding assessment for 1919 was made on May 14, 1925, the date on which the Commissioner signed the schedule of refunds and credits. Girard Trust Co. v. United States, 270 U. S. 163, 46 S. Ct. 229, 70 L. Ed. 524; United States v. Swift & Co., 282 U. S. 468, 51 S. Ct. 202, 75 L. Ed. 464. The statutory period in which the 1919 tax could be collected had expired when the credit was made. If the credit was made by the Commissioner of his own motion without the taxpayer's approval or with an approval falling short of inducement and request, it was void as an erroneous credit under section 609 of the Revenue Act of 1928, 45 Stat. 791, 875 (26 USCA § 2609). R. H. Stearns Co. v. United States, 54 S. Ct. 325, 78 L. Ed. ——, decided by the Supreme Court on January 8, 1934.

■ The facts disclosed by the findings justify the conclusion that the credit was made with the taxpayer's approval and in accordance with its request. The 1919 return showed a tax liability of $34,718.64. No part of the tax shown to be due on the return was paid by the company at the time the return was filed, or subsequently. A claim for credit for the entire amount of the tax against an asserted overpayment for a like amount for the year 1918 accompanied the return. Subsequently, on June 21, 1922, and before the Commissioner had completed his

audit of the company's 1918 return, the company filed amended returns for the years 1919 and 1920. The amended return for 1919 disclosed a tax liability of $74,107.67 instead of $34,718.64 shown on the original return for that year, while the amended return for 1920 disclosed a tax liability of only $151.55, as against a tax of $38,290.68 shown on the original return for that year. With the amended returns for 1919 and 1920 the company transmitted a letter in which it was stated "no additional payments of taxes nor claims for refund are being made with the filing of these amended returns as it is assumed that the adjustment of all payments will be made with the completion of your present audit. As a matter of information figures pertaining to the assessments and payments for the years 1918, 1919, and 1920, follow:" The company knew at the time this letter was written that the claim for credit of $34,718.64 made with the filing of the original return for 1919 against the alleged overpayment for 1918, if allowed in full, would pay less than half the amount of the tax due for the year 1919 as shown by the amended return. How did it expect to pay the balance of this tax? Not in cash, as the letter stated that no additional payments of taxes nor claims for refund were being made. The reason why no additional payments nor claims for refund were made with the filing of the amended returns is quite clearly explained by the statement that it was assumed that the adjustment of "all payments" would be made with the completion of the present audit. Manifestly "all payments" had reference to the years 1918, 1919, and 1920, as a detailed summary of the assessments and payments for these years followed. It is clear, therefore, that the company proposed to pay the 1919 taxes from overpayments asserted, but at that time undetermined, for the years 1918 and 1920. Construed in the light of these facts the letter accompanying the amended returns amounted to a direct request to the Commissioner to postpone the collection of the 1919 tax until the company's tax liability for all the years involved, had been finally determined, and to credit whatever overpayments the final audit might develop for the years 1918 and 1920 to the tax due for 1919. This is exactly what the Commissioner did. The final audit of the Commissioner determined an overpayment of taxes for the year 1918 in the amount of $2,636.96, and an overpayment for 1920 in the amount of $38,139.13, and an underassessment for the year 1919 of $29,029.36, which amount was subsequently duly assessed. The Commissioner credited the overpayment of $2,636.96 for the year 1918 to the original tax for 1919. This credit was timely made and is not in controversy. He credited $32,081.68 of the overassessment for 1920 to the remaining balance due on the original return for 1919, and $6,057.45 to the additional tax assessed on the amended return for that year. The balance of the additional tax, $22,971.91, was paid by the company on April 11, 1925.

These adjustments were in accordance with the company's request, a request which necessarily carried with it approval of the Commissioner's action. The suspended collection of the amount in controversy, $32,081.68, by credit against the 1920 overpayment was valid, although the credit was made after the expiration of the statutory period for collection of the 1919 taxes. Section 609 of the 1928 Revenue Act (26 USCA § 2609) cannot be construed to make void a credit made in these circumstances, R. H. Stearns Co. v. United States, supra, and the plaintiffs are equitably estopped from asserting its invalidity, Ralston Purina Co. v. United States, 58 F.(2d) 1065, 75 Ct. Cl. 525, certiorari denied, 289 U. S. 732, 53 S. Ct. 594, 77 L. Ed. 1481; Naumkeag Steam Cotton Co. v. United States, 2 F. Supp. 126, 76 Ct. Cl. 687, certiorari denied, 289 U. S. 749, 53 S. Ct. 694, 77 L. Ed. 1495; David Daube v. United States, 59 F.(2d) 842, 1 F. Supp. 771, 75 Ct. Cl. 633; Id., 289 U. S. 367, 53 S. Ct. 597, 77 L. Ed. 1261, and it is immaterial whether recovery is sought on the disallowance of a proper claim for refund or upon the basis of an account stated.

The plaintiff in No. K–188 cannot recover because of its incapacity to maintain suit. The plaintiffs in Nos. L–118 and M–71 are not entitled to recover on the merits. The petition in each of the cases is therefore dismissed. It is so ordered.