ARMEN B. CONDO, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6803–76.    Filed October 31, 1977.

Armen B. Condo, pro se.
*Timothy L. Nelson,* for the respondent.

---

WILBUR, *Judge:* Respondent determined a deficiency against the A. B. Condo Corp. for the taxable year 1973 in the amount of $7,982.

This case is presently before us on respondent's motion to dismiss for lack of jurisdiction. This motion requires us to determine whether or not the A. B. Condo Corp. has the capacity to engage in litigation in this Court.[1]

## FINDINGS OF FACT

Armen B. Condo (hereinafter Armen) is president of and sole shareholder in the A. B. Condo Corp. (hereinafter Condo Corp.). Armen and the Condo Corp. have identical addresses, 8932 Skiff Circle, Huntington Beach, Calif. 92646.

Respondent's notice of deficiency, dated April 26, 1976, was addressed to "A. B. Condo Corporation." When Armen saw this notice, he believed that since the Condo Corp. was dormant, he was the corporation and the deficiency notice was applicable to him as such.

The petition is captioned, "Armen B. Condo, Petitioner." Above the caption is typed "A. B. Condo Corporation" and the Condo Corp.'s address. The petition requests "a redetermination of the deficiency set forth by the Commissioner of Internal Revenue in his notice of deficiency" which is appended to the petition.

Paragraph I of the petition describes petitioner as an individual. Paragraph II states that "The notice of deficiency (see Exhibit 'A') was mailed to petitioner." It was Armen's intention in filing the petition herein to contest the deficiency sent by respondent to the Condo Corp.

The Condo Corp. was organized under the laws of California. Since December 15, 1969, its corporate rights, powers, and privileges have been suspended pursuant to California Revenue & Taxation Code sections 23301 et seq. (West 1970).

## OPINION

We must decide whether the Condo Corp., to which the

---

[1]In view of our decision on this issue, we assume, without deciding, that on the facts before us, the petitioner may ratify the petition brought on its behalf by its president and sole stockholder. See *Fletcher Plastics, Inc. v. Commissioner,* 64 T.C. 35 (1975).

deficiency notice was addressed, has the capacity to litigate in this Court.

The capacity of a corporation to litigate in the Tax Court is governed by Rule 60(c), Tax Court Rules of Practice and Procedure, which provides, inter alia:

The capacity of a corporation to engage in such litigation shall be determined by the law under which it was organized. * * *

The comments to this rule note that it is derived from rule 17(b) of the Federal Rules of Civil Procedure. Although it has no counterpart in the prior Tax Court Rules of Procedure, Federal courts in general,[2] and this Court in particular,[3] have long followed this rule in determining the capacity of a corporation to litigate in a Federal court. "Rule 60(c) merely codified the existing practice of this Court." *Dillman Bros. Asphalt Co. v. Commissioner*, 64 T.C. 793, 795 (1975).

Since the Condo Corp. was organized under the laws of California, we look to the laws of that State in determining its capacity to litigate. California Revenue & Taxation Code section 23301 (West supp. 1976) provides the following penalty for those corporations which fail to pay their State taxes within a specified period:

Except for the purpose of amending the articles of incorporation to set forth a new name, the corporate powers, rights and privileges of a domestic taxpayer shall be suspended

Further, California Revenue & Taxation Code section 23302 (West 1970) provides that:

The Franchise Tax Board shall transmit the name of such delinquent taxpayer to the Secretary of State, and the suspension or forfeiture herein provided for shall thereupon become effective and the certificate of the Secretary of State shall be prima facie evidence of such suspension or forfeiture.

Respondent has presented a certificate of filing and suspension from the secretary of state of the State of California certifying that on December 15, 1969, the Condo Corp. was suspended pursuant to these statutes. The corporation has not

---

[2] See, e.g., *Title Co. v. Wilcox Bldg. Corp.*, 302 U.S. 120 (1937); *Big Sespe Oil Co. v. Cochran*, 276 F. 216 (9th Cir. 1921); *Charles A. Zahn Co. v United States*, 79 Ct. Cl. 215, 6 F. Supp. 317 (1934). See generally, 3A J. Moore, Federal Practice, par. 17.21 (1977); J. Kennedy, "Federal Civil Rule 17(b) and 17(c): Qualifying to Litigate in Federal Court," 43 Notre Dame Lawyer 273 (1968).

[3] E.g, *George Wiedemann Brewing Co. v. Commissioner*, 4 B.T.A 664 (1926).

been reinstated. Therefore the corporate powers, rights, and privileges of the Condo Corp. have been, and remain, suspended.

The Supreme Court of California summarized the effects of a corporate suspension in *Reed v. Norman*, 48 Cal.2d 338, 343, 309 P.2d 809, 812 (1957):

On the issue of suspension of the corporation for failure to pay franchise tax, it is true that under the corporation law, Rev. & Tax. Code, sections 23301, 23302, supra, the corporation may not prosecute or defend an action, nor appeal from an adverse judgment in an action while its corporate rights are suspended for failure to pay taxes, *Boyle v. Lakeview Creamery Co.*, 9 Cal. 2d 16, 68 P.2d 968; *Ocean Park Bath House & Amusement Co. v. Pacific Auto Part Co.*, 37 Cal. App. 2d 158, 98 P. 2d 1068; *Baker v. Ferrel*, 78 Cal. App. 2d 578, 117 P. 2d 973; *Fidelity Metals Corp. v. Risley*, 77 Cal. App. 2d 377, 175 P. 2d 592. * * *

Therefore, the Condo Corp. lacks the capacity both to sue and to defend against a suit in a State court. *Alhambra-Shumway Mines v. Alhambra Gold Mine Corp.*, 155 Cal. App.2d 46, 317 P.2d 649 (3d Dist. Ct. App. 1957), appeal dismissed 356 U.S. 583 (1958); *Graceland v. Peebler*, 50 Cal. App.2d 545, 123 P.2d 527 (2d Dist. Ct. App. 1942).

Recently a Federal court has considered the effect of a corporate suspension under these statutes on the capacity of a corporation to litigate in a Federal court. *Mather Construction Co. v. United States*, 201 Ct. Cl. 219, 475 F.2d 1152 (1973), involved a corporate plaintiff seeking to recover money ordered paid from an escrow of its funds upon the request and authorization of the Department of the Air Force and the Federal Housing Administration. The court dismissed the plaintiff under Court of Claims rule 61(b)—which is identical on this point to Rule 60(c), Tax Court Rules of Practice and Procedure—because the plaintiff was a California corporation suspended under the same statues by which Condo Corp. is suspended. The court concluded that the corporation lacked the capacity to sue under the law of the State in which it was organized, and therefore also lacked the capacity to litigate in a Federal court. Cf. *Weinstock v. Sinatra*, 379 F. Supp. 274 (C.D. Cal. 1974).

We conclude, therefore, that under Rule 60(c), Tax Court Rules of Practice and Procedure, the Condo Corp. does not possess the capacity to litigate the issue of its liability in this Court because it does not possess the capacity to litigate "by the law under which it was organized." Our conclusion is in accord with previous interpretations of this rule. In both *Dillman Bros.*

*Asphalt Co. v. Commissioner,* 64 T.C. 793 (1975), and *Great Falls Bonding Agency, Inc. v. Commissioner,* 63 T.C. 304 (1974), this Court considered the capacity of dissolved corporations to litigate. The State laws under which both corporations had been organized provided that dissolved corporations could file suit only within 2 years after dissolution. We held that, where the petition had been filed more than 2 years after dissolution, the corporations did not possess the capacity to challenge the deficiencies in this Court.

> Whether such a corporation has the capacity to then petition this Court is another question. Our Rule 60(c) says that the answer to that question is to be determined by the law under which it was organized. Here, that means Illinois law, and, as is shown above, that law, statutory and decisional, is clear that the petitioner does not have capacity to maintain this case. While Rule 60(c) for the first time articulates the principle therein set forth, the practice in this Court has followed that principle from the beginning. * * * [*Great Falls Bonding Agency, Inc. v. Commissioner, supra* at 306.]

Even before the adoption of Rule 60(c) we looked to State law to determine the capacity of corporations to litigate. While several cases arose involving dissolved corporations,[4] we have found only three involving suspended corporations. In *Lang Body Co. v. Commissioner,* 16 B.T.A. 728 (1929), the Board found that a suspended Ohio corporation had capacity to litigate because under Ohio law, unlike the California statute involved herein, suspended corporations were de facto corporations and the directors of such corporations were authorized to sue for and recover corporate debts and property. In *Premier Packing Co. v. Commissioner,* 12 B.T.A. 637 (1928), respondent moved to dismiss alleging that petitioner had been dissolved and therefore the wrong persons had signed the petition on its behalf. The Board held that the corporation had been suspended rather than dissolved and therefore that California's laws as to the rights of dissolved corporations to sue did not apply. It is clear from the opinion that the capacity of suspended corporations was assumed and not considered as an issue.

---

[4]See, e.g., *Badger Materials, Inc. v. Commissioner,* 40 T.C. 1061 (1963), withdrawing in part and modifying 40 T.C. 725 (1963); *Wheeler's Peachtree Pharmacy, Inc. v. Commissioner,* 35 T.C. 177 (1960); *Estate of S. S. Hunter, Inc. v. Commissioner,* 26 B.T.A. 259 (1932), affd. without written opinion (5th Cir. 1933), all finding that the corporations had no capacity to litigate. See also, e.g., *Buzard v. Commissioner,* 28 B.T.A. 247 (1933), modified 64 App. D.C. 268, 77 F.2d 391 (D.C. Cir. 1935); *George Wiedemann Brewing Co. v. Commissioner,* 4 B.T.A. 664 (1926), finding capacity to litigate. See generally, "When You Go to the Tax Court," par. 115 (1972).

The following year, in *California Iron Yards Co. v. Commissioner*, 15 B.T.A. 25 (1929), affd. 47 F.2d 514 (9th Cir. 1931), this issue was directly raised. Petitioner was a California corporation suspended under what was then the California Political Code section 3669(c)(2):

> After six o'clock p.m. of the Saturday preceding the first Monday in March of any year, the corporate rights, privileges and powers of every domestic corporation which has failed to pay said (franchise or other) tax and money penalty shall, from and after said hour of said day, be suspended, and incapable of being exercised for any purpose or in any manner, except to defend any action brought in any court against such corporations, until said tax with all accrued penalties * * * are paid as hereinafter provided.

This Court reasoned that although the corporation could not institute affirmative actions, it could institute proceedings of a defensive nature.

> We think that the petitioner's officers or directors of the corporation might properly defend the corporation in any proceeding brought against it. While under the statutes of California the corporation, itself, has no power to *institute* proceedings, this proceeding before the Board, while initiated by a taxpayer, is in its nature in substance a defensive action.
>
> The Commissioner proposes to assess a tax, and unless reason is shown why it should not be assessed, it will be assessed and collected under the statute. It is an action to prevent the collection of the tax rather than an action to recover something in behalf of the corporation. * * * Nor, in our opinion, was the purpose of the statute to prohibit the corporation at any time from defending itself and having its liability judicially determined, although its power to institute and maintain actions generally is suspended. [*California Iron Yards Co. v. Commissioner*, 15 B.T.A. at 34. Emphasis in original.]

The Ninth Circuit affirmed on different grounds.

> The petitioner justifies its appearance in this court on the ground that it is in effect defending an action brought "in court" against the corporation, but this position cannot be maintained. The assessment by the Commissioner is in no sense an action "in court." The petitioner acts affirmatively and does not "defend an action in court" in taking an appeal to the Board of Tax Appeals, and this board is not a court but an administrative body. A petition filed with this court to review the action of the Board of Tax Appeals is an affirmative action by the petitioner not justified by the California statute. But we think the entire procedure by the taxpayer justified and authorized by the federal law, and that the same rule which authorized the appearance of the delinquent corporation before the Board of Tax Appeals and before this court authorized and justified the above-mentioned waiver filed by it with the Commissioner of Internal Revenue. [*California Iron Yards Co. v. Commissioner, supra*, 47 F.2d at 517.]

Insofar as the Board's decision was based on the former

California Political Code section 3669(c)(2), it is not relevant to the present case. That section was the predecessor of California Corporations Code section 5700 (West 1977) (repealed effective Jan. 1, 1977), rather than California Revenue & Taxation Code section 23301 et seq. (West 1970), under which petitioner has been suspended. Under these latter provisions the suspended corporation is not given the right to defend suits, which was granted in the former statute, and in comparing the effect of the two provisions the California Supreme Court said:

The omission seems deliberate and indicates the legislative intention that such corporations shall be deprived of the power to defend suits. * * * The conclusion which we are forced to draw is that the appellant corporation has lost the right to defend the suit in question, and since it has no right to defend, it has no right to appeal from an adverse decision. [*Boyle v. Lakeview Creamery*, 9 Cal.2d 16, 68 P.2d 968, 970 (1937).]

Thus California law clearly prevents suspended corporations from prosecuting or defending any action "defensive though it may be." *Brown v. Superior Court*, 242 Cal. App.2d 519, 51 Cal. Rptr. 633, 635 (3d Dist. Ct. App. 1966).

To the extent that the Ninth Circuit's opinion may be interpreted as holding that the capacity of corporations to litigate their tax liability in Federal courts may be determined without reference to State law, we feel that this does not reflect either the state of the law or that circuit's present position. In *G.M. Standifer Construction Corp. v. Commissioner*, 78 F.2d 285 (9th Cir. 1935), dismissing appeal from 30 B.T.A 184 (1934), just 4 years after *California Iron Yards Co.*, that same court held that the capacity of a dissolved corporation to litigate its tax liability is determined with reference to State law.

Also, we note that our present decision is based on Rule 60(c), Tax Court Rules of Practice and Procedure, which was pre-scribed under authority granted by section 7453, I.R.C. 1954. That rule is identical to rule 17(b), Federal Rules of Civil Procedure, which has been applied to suspended corporations even when suing on federally created causes of action. 6 C. Wright & A. Miller, Federal Practice and Procedure, sec. 1563, p. 739 (1971). In one such case, for example, it was held that a corporation whose charter had been revoked and canceled under State law for failure to pay franchise taxes did not possess the capacity to sue another corporation under the Clayton and

Sherman Antitrust Acts. *R. V. McGinnis Theatres & Pay T.V. v. Video Independent Th.*, 386 F.2d 592 (10th Cir. 1967).

We have no alternative but to grant respondent's motion and dismiss this case for lack of jurisdiction. However, we again point out, as we did in *Great Falls Bonding Agency, Inc. v. Commissioner,* 63 T.C. 304, 307 (1974), that Armen will not be deprived of the opportunity to litigate the issues raised on the merits, since respondent must proceed against him individually as a transferee pursuant to the provisions of section 6901 of the Internal Revenue Code of 1954, as amended.

*An appropriate order will be entered.*